[Cite as *In re D.B.*, 2025-Ohio-2342.]

COURT OF APPEALS
ASHLAND COUNTY, OHIO
FIFTH APPELLATE DISTRICT

IN THE MATTER OF:  D.B.   :    JUDGES:
          :    Hon. Andrew J. King, P.J.
          :    Hon. Robert G. Montgomery, J.
          :    Hon. David M. Gormley, J.
          :
          :
          :    Case No. 24-COA-037
          :
          :    O P I N I O N

CHARACTER OF PROCEEDING:     Appeal from the Juvenile Court,
               Case No. 20242125

JUDGMENT:          Affirmed

DATE OF JUDGMENT:       July 1, 2025

APPEARANCES:

For Plaintiff-Appellant        For Defendant-Appellee

JOSEPH P. KEARNS, JR.       CHRISTOPHER R. TUNNELL
P.O. Box 345           JAMES B. REESE III
153 West Main Street        110 Cottage Street
Ashland, OH  44805        Ashland, OH  44805

*King, J.*

{¶ 1}   Appellant, D.B., appeals the October 15, 2024 judgment of the Ashland County Court of Common Pleas, Juvenile Division adjudicating D.B. a delinquent child for the offenses of interference with custody and falsification. Plaintiff-appellee is the State of Ohio. We affirm the judgment of the trial court.

**Facts and Procedural History**

{¶ 2}   On May 30, 2024, Father was the custodial parent of 15-year-old E.H. On that day, Father gave E.H. permission to spend the night at a girlfriend's house. Unbeknownst to Father, however, E.H. instead had a friend drive her to D.B.'s home where she spent the night.

{¶ 3}   The following day, Father became aware that E.H. was not where she was supposed to be. He suspected she might be with D.B. as they had been dating for more than a year. Father drove to D.B.'s home and knocked on the door, but no one answered. Father left and contacted the Loudonville Police Department. Father also texted a friend, R.M., who lived next door to D.B. and told her he was looking for E.H. Father and Loudonville Police Officer McClellan went back to D.B.'s home. This time D.B. came to the door. D.B. denied E.H. was present at the home or that she had been there overnight. D.B. told Officer McClellan that E.H. had spent the night with one of her girlfriends. The officer noticed a curtain move in an upstairs window and asked D.B. who was upstairs. D.B. stated it was his sister.

{¶ 4}   Father and Officer McClellan left, but a short time later, McClellan received notice that neighbor R.M. had seen E.H. leave D.B.'s home in a truck. Later investigation revealed D.B. and E.H. were picked up by a friend of D.B. after Father and Officer

McClellan had left the scene. E.H. was dropped off at a hair salon where she was later located.

{¶ 5}   On June 27, 2024, the State of Ohio filed a juvenile delinquency complaint against D.B., alleging one count of interference with custody and one count of falsification, misdemeanors of the first degree if committed by an adult.

{¶ 6}   An adjudication hearing was held on September 9, 2024, wherein the State presented the above outlined facts. D.B. did not present any evidence. At the conclusion of the hearing the trial court took the matter under advisement in order to consider D.B's argument that what happened here did not constitute interference with custody. On September 17, 2024, the trial court issued its judgment entry finding D.B. was a delinquent child by reason of committing the offenses of interference with custody and falsification.

{¶ 7}   A disposition hearing was held on October 3, 2024 wherein the trial court placed D.B. on community control for an indefinite term and imposed various conditions and requirements.

{¶ 8}   D.B. timely filed an appeal and the matter is now before this court for consideration. D.B. raises one assignment of error as follows:

I

{¶ 9}   "THE TRIAL COURT ERRED WHEN IT FOUND THAT THE STATE HAD PROVEN THE CASES AGAINST THE APPELLANT, AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."

{¶ 10} In his sole assignment of error, D.B. challenges the finding of delinquency for interference with custody. The caption of D.B.'s assignment of error challenges the

manifest weight of the evidence. The argument that follows, however, challenges the sufficiency of the evidence. We therefore address both manifest weight and sufficiency.

Standard of Review

{¶ 11} A review of the sufficiency of the evidence and a review of the manifest weight of the evidence are separate and legally distinct determinations. *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997). "While the test for sufficiency requires a determination of whether the State has met its burden of production at trial, a manifest weight challenge questions whether the State has met its burden of persuasion." *Id*. at 390.

{¶ 12} On review for sufficiency, a reviewing court is to examine the evidence at trial to determine whether such evidence, if believed, would support a conviction. *State v. Jenks*, 61 Ohio St.3d 259 (1991). "The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *Jenks* at paragraph two of the syllabus, following *Jackson v. Virginia*, 443 U.S. 307 (1979). On review for manifest weight, a reviewing court is to examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine "whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist.1983). See also, *State v. Thompkins*, 78 Ohio St.3d 380 (1997). The granting of a new trial "should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." *Martin* at 175.

## Interference with Custody

{¶ 13} D.B. was found delinquent by reason of committing the offense of interference with custody pursuant to R.C. 2919 .23(A), a misdemeanor of the first degree if committed by an adult. That section provides in relevant part:

> No person, knowing the person is without privilege to do so or being reckless in that regard, shall entice, take, keep, or harbor a person identified in division (A)(1), (2), or (3) of this section from the parent, guardian, or custodian of the person identified in division (A)(1), (2), or (3) of this section:
>
> (1) A child under the age of eighteen, or a mentally or physically handicapped child under the age of twenty-one[.]

## The Evidence

{¶ 14} Testimony established that on the morning of May 31, 2024, Father, who is E.H.'s custodial parent, discovered 15-year-old E.H. was not where she was supposed to be. Father went to D.B.'s home suspecting E.H. might be there. D.B. didn't come to the door until Father returned with a police officer in tow. When Father and the officer spoke with D.B., he lied claiming E.H. was not there and had spent the night at a girlfriend's house. After Father and the officer left, D.B.'s neighbor reported seeing E.H. and D.B. leave the house with a third party. Father never spoke with D.B. the night before, nor gave D.B. any reason to believe E.H. was permitted to stay the night with him. Transcript of trial (T.) 15-16, 20, 22, 25-26.

{¶ 15} According to the Merriam-Webster dictionary, to harbor means to shelter or hide. The evidence demonstrated that D.B. both sheltered and hid E.H from Father. The fact the D.B. lied about sheltering or hiding E.H. demonstrated his knowledge that he was without privilege to do so, or was at minimum reckless in that regard.

## D.B.'s Arguments

{¶ 16} D.B. argues E.H. voluntarily went to D.B.'s, that they were in a long-term relationship, that Father liked D.B., and that there was no evidence that Father was planning on taking immediate custody of E.H. But D.B. cites no authority to support a conclusion that these things are affirmative defenses to the offense of interference with custody.

{¶ 17} D.B. further argues that the interference with custody statute was not intended to apply to "young teenage paramours." Brief of appellant at 9. The statute, however, makes no limitation as to the relationship between the parties or their age. We observe that rather than challenging the manifest weight or sufficiency of the evidence, D.B.'s argument appears to challenge the prosecutor's exercise of charging discretion. It is well settled, however, that "[a]s long as a prosecutor has probable cause to believe that an accused committed an offense, the decision whether or not to prosecute and on what charges is completely within the prosecutor's discretion." *State v. Semenchuk*, 122 Ohio App.3d 30, 38 (8th Dist.1997). In the trial court, D.B. did not allege the prosecutor was without probable cause to file the complaint in this matter, nor does he raise the issue here on appeal.

{¶ 18} The finding of delinquency for interference with custody was supported by sufficient evidence and was not against the manifest weight of the evidence. Accordingly, the sole assignment of error is overruled.

{¶ 19} The judgment of the Ashland County Court of Common Pleas Juvenile Division is affirmed.


By: King, P.J.

Montgomery, J. and

Gormley, J. concur.